IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANNA PINSONEAULT, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Case No.   1:21-cv-5839 |
| | ) | |
| LUNDBECK PHARMACEUTICALS LLC, | ) | JURY TRIAL DEMANDED |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

## COMPLAINT AT LAW

Plaintiff, Anna Pinsoneault ("Plaintiff" or "Ms. Pinsoneault") by and through her attorney,

Timothy A. Scott of Fegan Scott LLC, and for her Complaint against Defendant Lundbeck

Pharmaceuticals LLC ("Defendant" or "Lundbeck") (all allegations being made on information

provided to counsel by Plaintiff), states as follows:

### I.      NATURE OF THE CASE

1.      Over the course of her employment with Lundbeck, Ms. Pinsoneault was repeatedly

subjected to a discriminatory and hostile work environment created by her manager, Crystal Fitch

("Ms. Fitch"), and fostered by her employer, Defendant Lundbeck Pharmaceuticals LLC. Despite

multiple complaints to Lundbeck's HR Department ("HR") about Ms. Fitch's behavior, Lundbeck

failed to alleviate the problem. As a result of Lundbeck's inaction, a work environment was created

that was replete with hostility towards Ms. Pinsoneault and one that was inherently discriminatory

toward Ms. Pinsoneault based on her race and gender.  Moreover, after Pinsoneault discussed her

issues with HR, Ms. Fitch engaged in retaliatory conduct against Pinsoneault and ultimately had

1

her terminated for failing to meet visit quotas during a pandemic. Ms. Fitch's retaliatory conduct also served to prohibit Ms. Pinsoneault from finding alternate work within the tight Chicago Life Sciences community.

2.      Ms. Pinsoneault filed a charge with the Equal Employment Opportunity Commission on February 5, 2021 (EEOC NO.: 440-2021-02270), raising claims of race discrimination, fostering a hostile work environment, and retaliation. A copy of the charge letter is attached as Exhibit A. The EEOC issued a Notice of Right to Sue letter dated Wednesday, August 4, 2021. The right to sue was delivered by electronic mail to counsel for Plaintiff on August 4, 2021. A copy of the notice letter is attached as Exhibit B.

3.      Ms. Pinsoneault timely brings this action against Defendant to recover for damages that she suffered as a direct and proximate result of Defendant's discriminatory and abusive practices.

## II.      JURISDICTION AND VENUE

4.      Jurisdiction for these causes of action is invoked by 28 U.S.C. §§1331 and 1343. Plaintiff's claims are authorized by Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e-(5) ("Title VII).

5.      This Court has supplemental jurisdiction over Plaintiff's state law claims (Illinois Intentional Infliction of Emotional Distress) pursuant to 28 U.S.C. § 1367.

6.      Venue in this district is proper under 28 U.S.C. §1391(a)(1), (2), and (3), and under the civil rights statute set out above, including 42 U.S.C. §2000e-5(f).

## III.      THE PARTIES

7.      Plaintiff, Anna Pinsoneault, is a 51-year-old white female and a resident of Chicago, Illinois.

8.      Ms. Pinsoneault was employed by Lundbeck from January 7, 2019, through August 27, 2020.

9.      Defendant, Lundbeck Pharmaceuticals LLC, is a worldwide pharmaceutical company based out of Delaware, with its United States' headquarters located at 6 Parkway North in Deerfield, IL 60015. According to its website, Lundbeck has more than 900 employees.

## IV.      BACKGROUND FACTS

10.      Ms. Pinsoneault was hired by Lundbeck as a neuroscience account manager on January 7, 2019.

11.      In this role, she served as the primary customer contact for medical professionals engaged in the neurosciences.

12.      As part of a team, she was responsible for sales in Lundbeck's Chicago market, with a focus on Lundbeck's North Shore clientele.

13.      Early in her tenure with Lundbeck, Ms. Pinsoneault received the highest marks a field-based employee could get.

14.      She never had any issues with management, co-workers, or any of her customers.

15.      In March of 2019, Crystal Fitch became Ms. Pinsoneault's area business manager.

16.      Ms. Fitch is a black woman.

17.      Immediately upon her arrival, it became clear that Ms. Fitch had a tendency to treat male and black female employees differently than and similarly situated, non-black women.

18.      Ms. Fitch immediately took a hostile position against Ms. Pinsoneault and other white female employees at Lundbeck.

19.      In 2019 a white female co-worker of Pinsoneault made a formal charge for race-based discrimination, hostile work environment, and retaliation against Ms. Fitch.

20.     Shortly after her co-worker's complaint, Ms. Pinsoneault was contacted by Lundbeck's Human Resources department regarding Ms. Fitch's treatment of that employee.

21.     Ms. Pinsoneault was hesitant to speak with Lundbeck's Human Resources department regarding the Complaint in fear of retaliation by Ms. Fitch.

22.     Indeed, Ms. Pinsoneault was in constant fear of retaliation from Ms. Fitch, and Lundbeck due to the unabashed favoritism of other employees on the basis of race.

23.     Ms. Pinsoneault voiced those fears and was assured that the meeting would be confidential and that there would be no retaliation for her involvement.

24.     Taking stock in Lundbeck's assurances, Ms. Pinsoneault spoke to HR and mirrored her co-worker's concerns.

25.     Lundbeck's assurances of confidentiality were clearly overstated; however, shortly after her interview with Human Resources, Ms. Fitch's hostility toward her increased, and she became the target of Fitch's retaliatory conduct.

26.     Ms. Pinsoneault complained of Ms. Fitch's hostility and retaliatory conduct to both Human Resource and Ms. Fitch's supervisor, which resulted in a meeting with Ms. Pinsoneault, Ms. Fitch, and Ms. Fitch's supervisor at the end of 2019.

27.     From that point on, with the cloak of confidentiality no longer in place, Ms. Fitch's hostility toward Ms. Pinsoneault became even more intense.

28.     Ms. Fitch constantly showed favoritism for male and black female employees, which created a hostile work environment for similarly situated non-male and white female employees.

29.     After Ms. Pinsoneault complained to HR, Fitch targeted her even more than before.

30.     Ms. Fitch would consistently offer praise to others, for non-"best practices" actions, but rebuked Ms. Pinsoneault in front of co-workers for asking whether particular actions conformed with company policy. Fitch questioned Pinsoneault's ability to work well with others.

31.     When Ms. Pinsoneault voiced her concerns, Ms. Fitch would verbally attack with phrases such as "that never happened," "you always misinterpret things," "your perception of what occurs is way off, and you have a wacked sense of reality," and "you make things up."

32.     From 2019 through the date of her termination, Ms. Fitch spread false stories and rumors about Ms. Pinsoneault to undermine her performance.

33.     For example, she claimed that her entire team went to her after an Arizona conference to complain about Ms. Pinsoneault's negativity.

34.     However, all of Pinsoneault's team members denied that they went to Fitch to complain about her.

35.     When Ms. Pinsoneault asked Ms. Fitch about the allegations, Fitch replied that "she never said that" and that Ms. Pinsoneault was "making things up." Ms. Fitch could not provide a single example of any complaint from any of Pinsoneault's peers.

36.     Ms. Fitch's hostility and retaliatory conduct was also observed by Ms. Pinsoneault's customers. Who stated concerns about the situation with her manager and how Ms. Fitch treated her differently than other non-white account managers during interactions.

37.     In May of 2020, Fitch began a meeting with Pinsoneault by telling her that " she had multiple concerns regarding [Pinsonault's] willingness to collaborate and negativity" regarding a joint call plan with a sister company but was unable to offer a single instance on Pinsoneault's part toward others.

38.     Between September of 2019 and August of 2020, Ms. Fitch constantly rebuked Pinsoneault and questioned her ability to collaborate with others but provided no examples of her inability to collaborate.

39.     One customer told Pinsoneault that he was concerned about the situation with her manager because he noticed that multiple times, she did not listen to her and had concerns that she only saw one way to do things, which was her way.

40.     Another provider noticed how Ms. Fitch treated Pinsoneault during client interaction and compared theirs to a "master-servant" relationship.

41.     Ms. Fitch was unapologetic of her treatment of Pinsoneault.

42.     Toward the end of Ms. Pinsoneault's tenure with the Company, Ms. Fitch told her that personal relationships were very important to her and that she only wanted to work with people that she liked and that anything that came between that was not worth it for her to work with that person, despite their qualifications and achievements.

43.     At that point, it became clear to Pinsoneault that Fitch was going to find a way to get rid of her.

44.     Ms. Fitch created pre-textual "personal improvement plans" against Ms. Pinsoneault purportedly for her inability to collaborate with others and ultimately had her terminated for failing to meet her physician visit quotas – during a pandemic.

45.     On August 27, 2020, Lundbeck terminated Ms. Pinsoneault purportedly for low HCP activity, although prior to August 2020, she had consistently met or exceeded the district average.

46.     Lundbeck (and Fitch) manipulated the numbers to provide a basis for Ms. Pinsoneault's termination.

47.     Lundbeck's (and Fitch's) manipulation of the numbers to provide a basis for terminating her was a clear pretext for their true conduct.

48.     In reality, the numbers provided for Ms. Pinsoneault's termination were skewed by the fact that the covered time period included dates when she was on a pre-scheduled (and pre-approved) vacation, and the period she was forced to remain in her home under the city of Chicago's mandated quarantine period for the COVID 19 virus.

49.     As a resident of the city of Chicago, Ms. Pinsoneault had no control over this. On return from vacation in California, she was subject to the mandatory quarantine rules put in place by the city and had to quarantine at home for fourteen days before she could return to work outside of her home in any capacity.

50.     During the quarantine period, Ms. Fitch instructed Ms. Pinsoneault to pass along her appointments to other sales representatives rather than allowing her the opportunity to switch them to virtual appointments, which was common practice under the circumstances.

51.     Around the same time, another similarly situated male team member on vacation in July 2020 was told by Ms. Fitch that HCP numbers would not include dates that that employee was on vacation or under quarantine.

52.      Throughout the course of her employment, Ms. Pinsoneault was the victim of race and gender discrimination based on the unabashed favoritism shown toward men and black women by her area manager Crystal Fitch.

53.     This caused a hostile work environment for Ms. Pinsoneault (and other similarly situated white women) and a constant source of stress – which has created undue stress on her and caused her health problems.

54.     The conditions created by Ms. Fitch were known by and thus fostered by Lundbeck, which did nothing to alleviate the problem and through Ms. Fitch's intentional and outrageous conduct toward her.  Ms. Fitch's behavior created a hostile work environment that was fostered by Lundbeck.

55.     Ms. Fitch's vexatious and retaliatory conduct toward Pinsoneault prohibited her ability to flourish within the Company and ultimately led to my termination from Lundbeck.

56.     On information and belief, no less than five white women have been forced to leave Lundbeck under Ms. Fitch's tenure as the area manager, and all were replaced by males or black women.

57.     Nor did Lundbeck's malfeasance end with her termination.

58.     Since August of 2020, Pinsoneault applied to and interviewed for many sales positions in the pharmaceutical industry.

59.     Ms. Pinsoneault recently learned that when one of the companies called Lundbeck for confirmation of her employment dates, they were told only that she had been terminated from her position.

60.     As the result of Lundbeck's discriminatory and retaliatory conduct, Ms. Pinsoneault suffered damages, including lost wages, lost benefits, emotional distress, and damage to her reputation.

## V.     CAUSES OF ACTION

### COUNT I

### Title VII– Hostile Work Environment

61.     Plaintiff restates and incorporates the above allegations as though fully stated herein.

62.     Ms. Pinsoneault is an individual protected under Title VII against an employer's fostering a hostile work environment.

63.     As described above, Ms. Fitch's conduct towards Plaintiff was unwelcome and occurred because of and based on Plaintiff's race and gender.

64.     Ms. Fitch's conduct occurred over several months and constituted a continuing course of discrimination and abuse towards Plaintiff.

65.     Ms. Fitch committed an unlawful employment practice by treating Plaintiff differently because of her race and gender, causing a change in the condition of her employment and subjecting her to a hostile work environment.

66.     Plaintiff was subjected to a discriminatory environment that was both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that Plaintiff did, in fact, perceive to be so.

67.     As Ms. Fitch was Plaintiff's immediate supervisor, Lundbeck is vicariously liable for her conduct.

68.     The conduct of Lundbeck had the purpose or effect of unreasonably interfering with Plaintiff's work performance.

69.     The conduct of Lundbeck further fostered and created an intimidating, hostile, and offensive work environment.

70.     Despite being fully aware of Ms. Fitch's discriminatory conduct, Lundbeck continued to employ her as Plaintiff's immediate supervisor.

71.     Through its actions, Lundbeck permeated a workplace filled with disparate treatment that is severe and regular enough to alter the conditions of Plaintiff's employment and create an abusive working environment.

72.     Lundbeck has therefore denied Plaintiff her rights under Title VII of the Civil

Rights Act of 1964, and she has suffered damages as a direct result of the conduct.

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A.  Grant Plaintiff an award in excess of the jurisdictional minimums of this Court,

B.  Grant the Plaintiff appropriate injunctive relief, lost wages, liquidated
    damages, front pay, compensatory damages, punitive damages, prejudgment
    interest, post-judgment interest, and costs, including reasonable attorneys' fees
    and expert witness fees; and

C.  Any other relief as the Court deems appropriate.

## COUNT II

### Title VII– Race Discrimination

73.     Plaintiff restates and incorporates the above allegations as though fully stated

herein.

74.     Plaintiff's race was a motivating factor in Ms. Fitch's decision to discipline Plaintiff

for the aforementioned alleged infractions.

75.     Circumstances exist to show an inference that Ms. Fitch had an inclination to

discriminate invidiously against white employees or evidence that there is something "fishy" about

the facts at hand.

76.     Ms. Pinsoneault was meeting Lundbeck's legitimate performance expectations.

77.     Ms. Pinsoneault suffered an adverse employment action.

78.     Ms. Pinsoneault was treated less favorably than other similarly situated non-white

employees.

79.     Plaintiff's race was a motivating factor in Ms. Fitch's decision to discriminate

against Plaintiff.

80.     Ms. Fitch acted with the intent to discriminate against Plaintiff because of Plaintiff's race.

81.     Ms. Fitch intended to deprive Plaintiff of rights that Ms. Fitch afforded non-white employees.

82.     By Ms. Fitch's actions, and Defendant's condoning of these actions, Plaintiff's federal civil rights have been violated.

83.     As Ms. Fitch was Plaintiff's immediate supervisor, Lundbeck is vicariously liable for her discriminatory conduct.

84.     Similarly, situated non-white employees were not and have not been disciplined for the types of infractions described above.

85.     At all relevant times, Plaintiff met Defendant's performance expectations, including earning the highest revenue and highest accolades a field employee could receive.

86.     The discriminatory conduct was not welcomed by Plaintiff.

87.     Plaintiff was harmed, to include loss of employment opportunities, humiliation, and mental stress.

88.     The harassing and discriminatory conduct was the proximate cause and substantial factor in causing Plaintiff's harm.

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

A. Grant Plaintiff an award in excess of the jurisdictional minimums of this Court,

B. Grant the Plaintiff appropriate injunctive relief, lost wages, liquidated damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorneys' fees and expert witness fees; and

C. Any other relief as the Court deems appropriate.

## COUNT III

### Title VII—Gender Discrimination

89.     Plaintiff restates and incorporates the above allegations as though fully stated herein.

90.     Plaintiff's gender was a motivating factor in Ms. Fitch's decision to discipline Plaintiff for the aforementioned alleged infractions.

91.     Circumstances exist to show an inference that Ms. Fitch had an inclination to discriminate invidiously against white female employees or evidence that there is something "fishy" about the facts at hand.

92.     Ms. Pinsoneault was meeting Lundbeck's legitimate performance expectations.

93.     Ms. Pinsoneault suffered an adverse employment action.

94.     Ms. Pinsoneault was treated less favorably than other similarly situated white non-male employees.

95.     Plaintiff's gender was a motivating factor in Ms. Fitch's decision to discriminate against Plaintiff.

96.     Ms. Fitch acted with the intent to discriminate against Plaintiff because of Plaintiff's gender.

97.     Ms. Fitch intended to deprive Plaintiff of rights that Ms. Fitch afforded non-white female employees.

98.     By Ms. Fitch's actions and Defendant's condoning of these actions, Plaintiff's federal civil rights have been violated.

99.     As Ms. Fitch was Plaintiff's immediate supervisor, Lundbeck is vicariously liable for her discriminatory conduct.

100.    Similarly, situated male employees were not and have not been disciplined for the types of infractions described above.

101.    At all relevant times, Plaintiff met Defendant's performance expectations, including earning the highest revenue and highest accolades a field employee could receive.

102.    The discriminatory conduct was not welcomed by Plaintiff.

103.    Plaintiff was harmed, to include loss of employment opportunities, humiliation, and mental stress.

104.    The harassing and discriminatory conduct was the proximate cause and substantial factor in causing Plaintiff's harm.

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

D.  Grant Plaintiff an award in excess of the jurisdictional minimums of this Court,

E.  Grant the Plaintiff appropriate injunctive relief, lost wages, liquidated damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorneys' fees and expert witness fees; and

F.  Any other relief as the Court deems appropriate.

### Count IV

### Title VII– Retaliation

105.    Plaintiff restates and incorporates the above allegations as though fully stated herein.

106.    Following Plaintiff's interview in connection to a former white female co-worker's formal charge for race-based discrimination, hostile work environment, and retaliation, Ms. Fitch retaliated against Ms. Pinsoneault by, among other things, belittling her in front of co-workers and spreading false rumors about Plaintiff's ability to work well with others and created pre-textual "personal improvement plans."

13

107.     Plaintiff made complaints to Defendant's HR department against her area manager, Crystal Fitch, for abusive behavior and disparate treatment.

108.     Following Plaintiff's complaints, Fitch retaliated against Ms. Pinsoneault by, among other things, giving low-performance evaluations, engaged in increased scrutiny, and manipulated Plaintiff's HCP numbers.

109.     Moreover, Defendant placed Ms. Pinsoneault on a pre-textual personal improvement plan for Plaintiff's inability to "collaborate" with others, although there were no complaints about her negativity to collaborate with others- other than Crystal Fitch.

110.     This effectively prohibited Ms. Pinsoneault from obtaining different positions within the company and resulted in her termination.

111.     Prior to Ms. Pinsoneault's complaint about the disparate treatment, Plaintiff had received nothing but positive reviews and was never subject to discipline.

112.     During her employment at Lundbeck, Plaintiff was subjected to disparate treatment and a hostile work environment at the hands of Defendant in retaliation for exercising her civil rights by being witness to discriminatory actions and making her own personal complaints.

113.     Lundbeck's termination of Ms. Pinsoneault's employment was clearly pre-textual as it was, in no small part, based on numbers pulled during the period she was on a pre-approved, scheduled vacation and during a governmentally mandated quarantine – which violates city, state, and federal law, and constitutes unreasonable, vexatious and unconscionable conduct.

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

    A. Grant Plaintiff an award in excess of the jurisdictional minimums of this Court,

    B. Grant the Plaintiff appropriate injunctive relief, lost wages, liquidated damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorneys' fees and expert witness fees; and

C.  Any other relief as the Court deems appropriate.

## COUNT V

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

114.    Plaintiff restates and incorporates the above allegations as though fully stated herein.

115.    As described above, Defendant's conduct of race-based discrimination, hostile work environment, and retaliation against Plaintiff was deliberate. Defendant deliberately and/or recklessly inflicted emotional and psychological harm on Plaintiff.

116.    Ms. Fitch's conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency.

117.    As a direct result of Defendant's actions, Plaintiff suffered pain and suffering, mental anguish, loss of the capacity for the enjoyment of life, and has incurred expenses for medical treatment, loss of property, loss of earnings, and/or the loss of the ability to earn money. These losses are either permanent or continuing, and Plaintiff will suffer the losses in the future.

118.    Defendant's acts were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights, for which she is entitled to an award of punitive damages.

119.    Defendant's actions were intentional, willful, and in reckless disregard of Plaintiff's rights under Title VII.

120.    Plaintiff has suffered damages as a result of Defendant's unlawful actions.

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

A.  Grant Plaintiff an award in excess of the jurisdictional minimums of this Court,

15

B.  Grant the Plaintiff appropriate injunctive relief, lost wages, liquidated damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorneys' fees and expert witness fees; and

C.  Any other relief as the Court deems appropriate.

## VI.   JURY DEMAND

121.   Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,
Anna Pinsoneault

By: /s/ *Timothy A. Scott*
One of her attorneys

Timothy A. Scott (ARDC No. 6243846)
Fegan Scott LLC
150 South Wacker Drive
24th Floor
Chicago, Illinois 60606
(630) 273-2625
tim@feganscott.com